UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FELIPE MELENDEZ,<br><br>Petitioner,<br><br>v.<br><br>ERIC ARNOLD, et al.,<br><br>Respondents. | Case No. 15-cv-03753-EMC<br><br>**ORDER DENYING RESPONDENT'S MOTION TO DISMISS; AND GRANTING PETITIONER'S MOTION TO STAY**<br><br>Docket Nos. 4, 15 |

## I. INTRODUCTION

Juan Felipe Melendez ("Petitioner"), a prisoner of the State of California, seeks an order staying his petition for a writ of habeas corpus and holding it in abeyance while he pursues his exhaustion proceedings in state court. Respondent is opposing petitioner's request for a stay. Respondent has filed a motion to dismiss arguing that petitioner's claims are time-barred. For the reasons stated below, respondent's motions to dismiss will be denied and petitioner's motion to stay will be granted.

## II. FACTUAL & PROCEDURAL BACKGROUND

A. <u>Procedural Background</u>

On July 24, 2009, petitioner was charged with: (1) robbery in the second degree; (2) attempted robbery in the second degree; (3) possession of a silencer; and (4) possession of a controlled substance (methamphetamine). Docket No. 1 at 12. ("Petition"). After a jury trial, the state trial court sentenced petitioner to 16 years imprisonment. Petition at 17. Petitioner appealed. *Id.* at 6. The California Court of Appeal affirmed the judgment of conviction. Docket No. 1-57, Exhibit RR at 2. On June 12, 2013, The California Supreme Court denied his petition for review. Petition at 6. Petitioner did not file a petition for writ of certiorari with the United States Supreme

1   Court. *Id*. On July 22, 2015, petitioner filed a petition for writ of habeas with the Santa Clara
2   Superior Court. *Id*. at 7, Attachment A. The state petition is pending. *Id*. at 7.
3   On August 17, 2005, Petitioner filed a habeas corpus petition in this Court pursuant to 28
4   U.S.C. § 2254. The petition sets forth four claims challenging the constitutionality of petitioner's
5   convictions and sentence in state court: (1) pretrial counsel was ineffective during plea
6   negotiations; (2) appellate counsel was ineffective in not challenging prosecutorial misconduct in
7   the guilt and sanity phases; (3) the prosecutor committed misconduct in the guilt phase by
8   denigrating the defense as a sham and vouching for the prosecution's own witness; and (4) errors
9   at trial and on appeal, in the cumulative, violated petitioner's constitutional rights. Petition at 28-
10  68.
11  The petition presents "mixed" claims; that is, one claim that is exhausted (Claim #3) and
12  three claims that are unexhausted (Claims #1, 2, and 4). Claims #1, 2, and 4 are pending in the
13  state habeas petition before the Santa Clara Superior Court. Petition at 7, Attachment A.
14  Petitioner has filed a motion to stay his federal proceeding while he exhausts his state claims.
15  Docket No. 4 ("MTS").

B.   Factual Background Relevant to the Motion to Stay

Petitioner retained Brian Berson in November 2009 to represent him in defending four charges brought in July 24, 2009. During plea negotiations, petitioner authorized Mr. Berson to seek an agreement that could result in a potential five years imprisonment. Exhibit N at 108 (December 28, 2009 Note from Brian Berson re: Defendant Authorizes Five Year Sentence) (stating "Δ authorizes me to suggest 5 yrs."). The prosecution offered petitioner 12 years imprisonment in exchange for pleading guilty. Exhibit J at 82. In December 2009, the prosecution offered to file a "hypothetical" amended complaint that added four additional charges, but removed the allegations that petitioner used a firearm in the commission of "serious felonies," substituting instead allegations that he used a firearm during the commission of "felonies." Petition at 34-35. This change would have reduced the consecutive sentence of 10, 15, or 25 years to a consecutive sentence of 3, 4, or 10 years. *Compare* Cal. Penal Code § 12022.5(a) *with* § 12022.53. On December 29, 2009, Mr. Berson rejected the prosecution's offer involving the

"hypothetical" complaint stating (erroneously) to Petitioner that the complaint "would guarantee [petitioner] significantly more time in prison than the 12 years already on the table." Exhibit P at 12. *See* Exhibit U at 128 (email stating "It was a 5-23 range, whereas I'd mistakenly thought the floor was still above 12, and that had been how I'd originally presented it to Felipe, telling him I didn't think it was a good deal.")

Petitioner contends that Mr. Berson misunderstood the prosecution's offer. In actuality, the offer permitted a minimum sentence of only five (5) years. *Id*. at 36. Petitioner states that Mr. Berson never communicated to him: (1) that the prosecution agreed to substitute the section 12022.53 allegations with section 12022.55 allegations; (2) the importance of such allegations; (3) the minimum or maximum sentences that he faced under either offer; or (4) the fact that he could receive a sentence potentially as low as five years imprisonment under the hypothetical amended complaint. *Id.* Petitioner asserts that "[he] [was] willing to plead guilty if the agreement permitted a potential sentence of five years imprisonment." Exhibit PP at 2. (July 13, 2015 Declaration of Juan Felipe Melendez).

After a preliminary setting hearing on December 31, 2009, Mr. Berson told petitioner and his friends "that the prosecution had made another offer that would have guaranteed [him] more time in prison than 12 years," Exhibit PP at 4, and that a better offer would be made after the motions to suppress and dismiss were heard. *Id*. The defense motions were denied, and the prosecution filed an amended complaint. Petition at 37. The prosecution did not offer the better plea deal. Exhibit PP at 4.

Prior to trial, Mr. Berson withdrew as petitioner's counsel on April 22, 2010. *Id*. at 38. Deputy Public Defender Patrick Hoopes represented petitioner during trial. *Id*. at 38. Petitioner was convicted following guilt and sanity phases. *Id*. Petitioner was sentenced to 16 years imprisonment. Before petitioner's November 2011 sentencing hearing, Mr. Hoopes located evidence indicating that Mr. Berson misunderstood the prosecution's offer. He discovered information about the December 25, 2009 offer from Mr. Berson via an email exchange. Mr. Hoopes was assigned to represent Petitioner in April of 2010. Exhibit OO at 272-73, Declaration of Patrick Hoopes. After reviewing Petitioner's file, Mr. Hoopes concluded that Mr. Berson

misunderstood the DA's offer. *Id*. at 270-71. First, Mr. Hoopes spoke with Mr. Berson on November 1, 2011 about the failed plea negotiations. *Id*. at 271. During that conversation Mr. Berson stated that he did not recommend the December 25, 2009 offer to Petitioner, instead he recommended to reject it. *Id*. On the same day, November 1, 2011, Mr. Hoopes emailed Mr. Berson three attachments: (1) a printout of court events in Petitioner's case; (2) a fax from DA Sanderson to Mr. Berson dated December 25, 2009; and (3) a one-page letter from Mr. Berson to DA Sanderson dated December 29, 2009. *Id*. at 271. Mr. Berson responded by email. *Id*. Mr. Berson stated that his memory had been refreshed and that he "did not calculate the terms of [the] offer correctly, made a counter-offer and [didn't] hear back from Sanderson b/f court." *Id*; Exhibit U at 130, Emails Between Patrick Hoopes and Brian Berson.

Mr. Hoopes informed appellate counsel Robert Derham of possible ineffective assistance during plea negotiations. Exhibit OO at 273. Mr. Hoopes states: "Sometime after filing the appeal on November 4, 2011, I informed Robert Derham, Mr. Melendez's appellate counsel at the time, about my communications with Mr. Berson, explaining that there might be an issue with regard to Mr. Berson's effectiveness during plea negotiations. Nobody asked me to disclose any documents, review and evidence, or prepare a declaration related to the plea negotiations until Mr. Melendez's current counsel contacted me in April of 2015." Exhibit OO at 273. Mr. Hoopes does not state that he spoke to Petitioner at that time. Petitioner acknowledges, however, "In 2012 or 2013, I asked Mr. Hoopes if there were any issues in my case that could be raised on appeal. He noted that Mr. Berson had incorrectly rejected the plea agreement." Exhibit PP at 279. There is no evidence that anything more was said.

Later, when Petitioner asked about the issue, both the appellate counsel Derham and trial counsel Berson misinformed Petitioner that there was no factual basis for an IAC claim because Petitioner was unwilling to plead guilty in exchange for an imprisonment term of 5 years. Exhibit QQ at 283-84 (Decl. of McComas). Mr. Berson and Mr. Derham also told Melendez that five years imprisonment was unrealistic in his case. McComas Decl., Exhibit QQ at 4; Exhibit PP at 5, July 13, 2015 Declaration of Juan Felipe Melendez. Petitioner contends he did not learn about the mistake until 2015. "In 2015, my mother retained counsel to investigate whether there was any

4

1  basis for post-conviction relief in my case. I met with counsel, reviewed evidence collected
2  through his investigation, and was informed of the factual and legal bases for the claims or error in
3  my case. I was not previously aware of factual and/or legal basis for Claims #1, 2, and 4."
4  Melendez Decl. ¶ 17, Exhibit PP at 279.

Petitioner thus asserts that he "was not informed that Mr. Berson had incorrectly rejected the agreement, or was ineffective in doing so." *Id*. Petitioner also contends that he lacked sufficient knowledge of the factual and legal bases of his ineffective assistance of counsel claim to trigger the statute of limitations under section 2244(d) until he retained postconviction counsel in March 2015. Docket No. 22 at 4 ("Opp'n to MTD"). Mr. Berson had not been cooperative and neither Mr. Hoopes nor Mr. Derham had obtained or reviewed the trial files. Petition at 23; McComas Decl. ¶ 14; Exhibit QQ at 286.

On November 4, 2011, Petitioner appealed his judgment and sentence to the Court of Appeal for the Sixth Appellate District. Petition at 17. Mr. Derham raised one argument challenging petitioner's conviction for possessing explosive materials (Count 5) due to prosecutorial misconduct in the guilt phase closing argument. *Id*. Mr. Derham waived oral argument and the Court of Appeal denied petitioner's appeal on April 2, 2013. *Id*. Petitioner filed a petition for review on May 3, 2013. *Id*. at 18. The California Supreme Court denied the petition on June 12, 2013. *Id*. Petitioner did not file a petition for a writ of certiorari. *Id*. On July 22, 2015, petitioner filed a petition for a writ of habeas corpus with the Santa Clara Superior Court. *Id*. at 19. The state petition is pending. *Id*.

### III. DISCUSSION

Petitioner did not file his federal habeas petition until August 18, 2015, well after the California Supreme Court denied his petition for review on June 12, 2013. As a result, the respondent moves to dismiss his habeas petition as time-barred.

A.  Writ of Habeas Corpus

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A

district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground." Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts; *see Hendricks v. Vasquez*, 908 F.2d 490, 491-92 (9th Cir. 1990) (habeas petitioner must state his claims with sufficient specificity). *See also Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (citing 28 U.S.C. § 2253). Conclusory allegations in a habeas petition fail to state a claim and do not suffice to shift the burden to the state to answer an order to show cause. *See Allard v. Nelson*, 423 F.2d 1216, 1217 (9th Cir. 1970).

B.   Statute of Limitations

Under AEDPA, state prisoners have one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). The date on which the one-year period begins to run is the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA statute of limitations begins to run on the day after a defendant's sentence becomes final, unless the defendant can demonstrate that one of the exceptions listed in 28 U.S.C.

6

1  § 2244(d)(1)(B), (C), or (D) is applicable to his case. *See Bowen v. Rowe*, 188 F.3d 1157, 1158-59
2  (9th Cir. 1999). Here, the California Supreme Court denied petitioner's petition for review on
3  direct appeal on June 12, 2013. Petition at 18. The petitioner admits that his federal petition was
4  filed over a year after the judgment underlying his conviction and sentence became final on
5  appeal. Petition at 21; *see Bowen*, 188 F.3d. at 1159 (recognizing that a judgment becomes final
6  one year and 90 days after the direct appeal concludes where no petition for writ of certiorari is
7  filed). Because petitioner did not file a petition for a writ of certiorari, under 28 U.S.C. §
8  2244(d)(1)(A) his petition arguably became time-barred on September 10, 2014, 90 days after the
9  direct appeal concluded. As discussed below, Petitioner seeks relief from the time basis under §
10 2244(d)(1)(B) and (D).

C.  <u>Motion to Stay & Abey</u>

Petitioner asks this Court to stay and abey the matter pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) and allow him to exhaust Claims #1, 2 and 4, which have not previously been exhausted but are currently pending before the state court post-conviction proceeding. Respondent asks the Court instead deny the stay and to adjudicate the timeliness of Petitioner's claims and dismiss the petition as untimely.

Where a federal habeas petition contains both exhausted and unexhausted claims, federal courts must dismiss such "mixed" petitions without prejudice to allow the petitioners to exhaust their claims in state courts. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). The interplay of this requirement and the one year time bar creates a problem for petitioners filing "mixed" petitions because the statute of limitations may preclude petitioners from obtaining federal review of the unexhausted claims because exhaustion in the state courts take time. *Rhines v. Weber*, 544 U.S. 269, 275 (2005).

In *Rhines*, the Supreme Court resolved this dilemma by permitting the district court, in its discretion, to "stay [a] petition and hold it in abeyance while [a] petitioner returns to state court to exhaust his previously unexhausted claims." *Id*. However, because a stay and abeyance has the potential to frustrate AEDPA's dual purposes of encouraging finality of state court judgments and creating incentives for petitioners to seek relief in state court first, the Supreme Court also stated

7

that the "stay and abeyance should be available only in limited circumstances." *Id*. at 277-78.

Thus, under *Rhines*, the stay and abeyance of a mixed petition is only appropriate when the district court determines: (1) there was good cause for the failure to exhaust the claim; (2) the unexhausted claim is not plainly meritless; (3) the failure to exhaust was not for purposes of delay. *Rhines*, 544 U.S. at 277-78. If a petitioner is able to meet all three requirements for a stay under *Rhines*, "it likely would be an abuse of discretion for a district court to deny a stay." *Id*.[1]

1. "Good Cause"

Neither the Supreme Court nor the Ninth Circuit has articulated precisely what constitutes "good cause" for purposes of granting a stay under *Rhines*. However, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court held that where state law requires an IAC claim be first presented in a state post-conviction proceeding, good cause exists where no counsel is appointed or that counsel was ineffective in such proceeding:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S.Ct. at 1320.

Here California law requires an IAC claim be brought as a state habeas. *People v. Mendoza Tello*, 15 Cal. 4th 264, 266-67 (1997), *as modified* (June 11, 1997) (stating that "[a] claim of ineffective assistance . . . is more appropriately decided in a habeas corpus proceeding). No counsel was appointed to represent Petitioner prior to the instant federal HC petition. Under

---

[1] The Ninth Circuit held that the alternative procedure in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007), which does not require a showing of "good cause" remains available after *Rhines*. *King v. Ryan*, 564 F.3d 1133, 1143 (9th Cir. 2009). A three-step procedure for mixed petitions, "allow[s] (1) a petitioner to amend his petition to delete any unexhausted claims; (2) the court in its discretion to stay and hold in abeyance the amended, fully exhausted petition, providing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) once the claims have been exhausted in state court, the petitioner to return to federal court and amends (sic) his federal petition to include the newly-exhausted claims." *King*, 564 F.3d at 1139 (explaining three-step procedure outlined in *Kelly*). Under this procedure, Petitioner can withdraw Claims #1, 2, and 4 and reassert them by amending his federal petition following the resolution of state court proceedings. Because the Court grants a stay under *Rhines*, it need not address a *Kelly* stay.

*Martinez*, there is good cause. *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013). The case for good cause is underscored here because the need for state habeas counsel was particularly great given the requirement under *In re Alvernaz*, 2 Cal.4th 924, 938 (1992) that an IAC claim must be supported by corroborative evidence (discussed in detail below). Here, Berson did not turn over documents to petitioner. Furthermore, both trial and appellate counsel affirmatively discouraged Petitioner from pursuing an IAC claim.

Moreover, even if the IAC claim could have been raised on direct appeal, appellate counsel was ineffective. The problem with Mr. Berson's performance should have been raised had appellate counsel done a complete investigation. There is no evidence appellate counsel made a deliberate tactical decision (which would tend to shield him from an ineffective assistance claim) because he did no investigation; he did not get the trial file, did not interview relevant witnesses, etc. Petition at 23; McComas Decl. ¶ 14; Exhibit QQ at 286.

In sum, good cause under *Rhines* exists.

2. <u>Not Plainly Meritless</u>

Under the second prong of the *Rhines* test, the court examines whether the unexhausted claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Put it differently , in *Cassett v. Stewart*, 406 F.3d 614, 623 (2005), the Ninth Circuit held that "a federal court may deny an unexhausted claim on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." (quoting *Jones v. Morton*, 195 F.3d 153, 156 n.2 (3d Cir. 1999)). The IAC claim is not plainly meritless. Petitioner has presented a colorable claim. Mr. Berson's mistake and failure to understand the plea offer and communicate it with full advice to Petitioner would constitute IAC. Exhibit P at 112, Letter from Berson to Sanderson; Exhibit U at 128-130, Emails from Hoopes to Berson; Exhibit PP at 278-00, Melendez Decl.

Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice with performance being measured against an "objective standard of reasonableness," "under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). In the context of a guilty plea, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and that (2) the outcome of the plea process would have

9

been different with competent advice. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). When the ineffective assistance leads to the rejection of the offer:

> a defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

Here, Mr. Berson did not convey to Petitioner that the prosecution offered a five years imprisonment plea offer. The Petitioner would have accepted the offer. Exhibit N at 108; Note re: Defendant Authorizes Five Year Sentence, Melendez Decl., Exhibit PP at 276. As a result of Mr. Berson's failure to inform Petitioner about the offer, Petitioner was sentenced to 16 years imprisonment.

The more significant question here is whether the IAC claim is timely. Petitioner makes a colorable argument that it is. Section 2244(d)(1)(B) creates "an exception to the general statute of limitations." *Loyd v. Van Natta*, 296 F.3d 630, 632 (7th Cir. 2002). This exception suspends the limitation period during the time when an impediment created by "State action in violation of the laws of the United States" prevents the petitioner from timely filing his habeas petition in federal court. *See* § 2244(d)(1)(B). *See also Maclin v. Robinson*, 74 Fed. Appx. 587, 589 (6th Cir. 2003); *Loyd v. Van Natta,* 296 F.3d 630, 632 (7th Cir. 2002).

To come within the 2244(d)(1)(B) exception, the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law. *Whalem v. Early*, 233 F.3d 1146, 1147 (9th Cir. 2000) (citing 28 U.S.C. § 2244(d)(1)(B)); *see also Egerton v. Cockrell*, 224 F.3d 433, 436 (5th Cir.2003).

Petitioner argues that the California Supreme Court's opinion in *In re Alvernaz*, 2 Cal. 4th 924, 938 (1992) constituted a state-created impediment within the meaning of 28 U.S.C. § 2244(d)(1)(B) that prevented him from the timely filing of a federal petition asserting the claim of ineffective assistance of counsel in plea negotiations. Petition at 22. In particular, *In re Alvernaz*

held that a defendant cannot make the requisite showing of prejudice from ineffective assistance of counsel based on his own assertions alone without independent corroboration. *In re Alvernaz*, 2 Cal.4th at 938 ("[A] defendant's self-serving statement-after trial, conviction, and sentence-that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence."). Here, the petitioner argues that *Alvernaz*'s corroboration requirement prevented him from filing a timely federal habeas petition because he had to obtain the assistance of postconviction counsel in order to collect corroborative evidence. Opp'n to MTD at 10. In particular, Petitioner was impeded by the lack of documents and trial file which Mr. Hoopes and Mr. Derham failed to obtain as well as the lack of any investigation into that claim by Mr. Derham. Here, had petitioner filed a state habeas claim without the corroborating evidence in accordance with *Alvernaz*, it would likely have been procedurally dismissed under *People v. Duvall*, 9 Cal. 4th 464, 474[2] (1995). Petitioner asserts that *Alvernaz* constitutes a "state action" within the meaning of § 2244(d)(1)(B) that "violate[s] federal law under *Strickland* by requiring petitioner to submit allegations that made it difficult, if not impossible, to assert his federal claims based on ineffective assistance of counsel." Opp'n to MTD at 3.[3]

Although Respondent argues that a state rule cannot constitute a state-created impediment under § 2244(d)(1)(B), courts have held that a state rule, though not posing a physical and

---

[2] *Duvall* outlines general pleading requirements for California habeas petitioners: "The petition should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.'" *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) (internal citations omitted).

[3] The Ninth Circuit has expressed doubt regarding whether *Alvernaz*'s corroboration requirement is objectively reasonable under federal law, but has not definitely ruled on the issue. *See Perez v. Rosario*, 459 F.3d 943, 947 n. 2 (9th Cir. 2006) (observing that "[t]here appears to be some uncertainty in this circuit as to the objective reasonableness of a state court's holding that uncorroborated, after-the-fact avowals are legally insufficient to establish that a petitioner would have accepted a plea bargain"; declining to resolve the issue); *contrast Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (declaring that petitioner's "self-serving" statement was insufficient to show prejudice), *with Nunes v. Mueller*, 350 F.3d at 1055 n. 6 (expressing the view, though without definitely ruling on the issue, that the *Alvernaz* corroboration requirement was in tension with *Strickland's* discouragement of mechanical rules).

practical barrier to filing a federal habeas petition, can constitute a legal impediment justifying relief from the time bar. *See In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006) (stating that because Texas's unique two-forum rule barred *habeas* petitioners from maintaining both state and federal proceedings at the same time, a habeas petitioner was entitled to equitable tolling of the deadline); *United States ex rel. Shamlodhiya v. Dorethy*, No. 13 C 8313, 2015 WL 5731854, at *3-4 (N.D. Ill. Sept. 30, 2015) (stating that a petitioner has made a colorable argument of good cause for his failure to exhaust because he could not bring his claim earlier since relevant case law did not arise until 2013).

Petitioner also seeks relief under Section 2244(d)(1)(D). He argues he was not able to discover the factual predicate of his IAC claim because Mr. Berson was uncooperative. Mr. Berson did not provide the trial file to Mr. Hoopes or Mr. Derham. Petitioner was never told by any prior counsel what the actual terms of the uncommunicated plea offer were, and in fact was dissuaded by his trial and appellate counsel from pursuing an IAC claim. According to petitioner, he was thus unable to discover with due diligence those factual predicates without the postconviction counsel, and that "[a]s soon as petitioner learned of the factual and legal bases for the claims he directed the [postconviction] counsel to file state and federal petitions on his behalf." Petition at 24.

While there is an argument that with due diligence Petitioner could have pressed his trial and appellate counsel for more information and answers, and learned more about the botched plea negotiations, all Petitioner needs to establish at this point under *Rhines* is a potentially meritorious or colorable claim. He has done so for purposes of obtaining a *Rhines* stay.

3.  <u>Not Dilatory</u>

Under *Rhines*, a stay and abey order may issue if "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id*. at 278. There is no evidence suggesting petitioner has engaged in dilatory litigation tactics. Petitioner diligently tried to exhaust and preserve his colorable claims without the appointment of counsel during his initial review collateral proceeding. Petitioner filed his state and federal petitions as soon as he was able to retain counsel and learn of the specific factual and legal bases for the colorable claims in July

12

1  2015. Moreover, Petitioner alleges that he has experienced severe mental health problems while
2  incarcerated. Petition at 25.

### 4. Other Relevant Factors

The interests of comity also favor granting Petitioner a stay under *Rhines*. AEDPA and the exhaustion doctrine "dictate that the state courts be given an opportunity to resolve a question of fact or state law, including issues of timeliness and merits, that may have an important bearing for purposes of comity and judicial efficacy before the federal courts make a determination, so that this Court can ultimately can review petitioner's claims on a fully informed basis." *Cueto v. McNeil*, 08-22655-CIV, 2010 WL 1258065, at *20 (S.D. Fla. Mar. 12, 2010) (citing *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987), overruled in part on other grounds by 28 U.S.C. One such issue may be, *e.g.*, the effectiveness of appellate counsel.

For all these reasons, petitioner is granted a stay pursuant to *Rhines*.

## IV. CONCLUSION

1. Respondent's Motion to Dismiss (Docket No. 15) is **DENIED**.

2. Petitioner's Motion to Stay is **GRANTED**.

Pursuant to Local Rule HC 3(g)(5), the Court grants petitioner a thirty (30) day period in which to commence litigation on the unexhausted claim in state court. Petitioner shall present Claims 1, 2, and 4 to the state court within thirty (30) days of the date this Order is stamped "Filed," and file proof of that submission in this Court. A stay to allow exhaustion on all 3 claims is warranted because claims 2 and 4 are related to the adjudication of claim 1. Moreover, "[i]f a stay is warranted with respect to any single claim, the court need not conduct a claim-by-claim exhaustion analysis regarding the remaining claims." *See Byford v. Baker*, No. 3:11-CV-00112-JCM, 2013 WL 431340, at *2 (D. Nev. Feb. 1, 2013).

Thereafter, petitioner shall file a brief report with this Court every ninety (90) days informing the Court of the status of the state court petition. Finally, petitioner shall file his Second Amended Petition in this case within thirty (30) days of the state court's resolution of his state habeas petition. If petitioner does not file an Amended Petition within this time frame, the stay and abeyance shall be lifted, and the matter shall proceed accordingly.

During the state court proceedings, all proceedings on the federal petition will be stayed. This will allow the California Supreme Court to complete the litigation of the state habeas petition before the substantive litigation on the federal habeas petition proceeds in this Court.

This order disposes of Docket Nos. 4 and 15.

**IT IS SO ORDERED**.

Dated: March 10, 2016

_____
EDWARD M. CHEN
United States District Judge