UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN FELIPE MELENDEZ, <br> Plaintiff, <br> v. <br> ROBERT NEUSCHMID, et al., <br> Defendants. | Case No. 15-cv-03753-EMC <br><br> **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; AND DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING** <br><br> Docket Nos. 96, 108 |

Juan Felipe Melendez has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The operative petition is the first amended petition. In that petition, Mr. Melendez raises several claims, including a claim that trial counsel was ineffective during plea negotiations. Currently pending before the Court is the State's motion to dismiss based on the statute of limitations. Mr. Melendez argues that the motion should be denied but, in the alternative, asserts that the Court should hold an evidentiary hearing to resolve disputed factual issues related to the statute of limitations.

Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court finds the matter suitable for resolution without oral argument and thus **VACATES** the May 14, 2020, hearing. Mr. Melendez's motion for an evidentiary hearing is **DENIED**. The State's motion to dismiss is **GRANTED**.

## I.     FACTUAL & PROCEDURAL BACKGROUND

In state court, Mr. Melendez was convicted by a jury of multiple crimes, including second-degree robbery, attempted second degree robbery, conspiracy to commit robbery, and dissuading a

witness.[1]

> The jury found true allegations that he personally used a firearm in the commission of the robbery and attempted robbery, personally used a firearm in the commission of the conspiracy, and was armed with a firearm while dissuading a witness. [Mr. Melendez also] pleaded guilty to possession of a controlled substance. [Altogether,] [h]e was sentenced to a 16-year prison term and ordered to pay a number of fees and fines.

*People v. Melendez*, No. H037581, 2013 WL 1316506, at *1 (Cal. Ct. App. Apr. 2, 2013).

Mr. Melendez was found guilty in July 2011. *See* Am. Pet. at 5. He appealed the conviction to the California appellate court. The appeal was denied in April 2013. *See Melendez*, 2013 WL 1316506. Mr. Melendez petitioned the California Supreme Court for relief. His petition was denied in June 2013. *See* Am. Pet. at 5. Thereafter, Mr. Melendez did not file any habeas petition, state or federal, apparently because his appellate attorney "said that there were no habeas issues." Am. Pet. at 5.

Some two years later, in July 2015, Mr. Melendez filed a state habeas petition (with the assistance of new counsel who had been retained by his mother in March 2015). *See* Am. Pet. at 5; *see also* Am. Pet., vol. VIII, Ex. 15 (state habeas petition). In the petition, he asserted the following claims:

(1) His trial counsel (Mr. Berson) was ineffective during plea negotiations.

(2) His appellate counsel (Mr. Derham) was ineffective in not challenging prosecutorial misconduct in the guilt and sanity phases.

(3) The prosecutor committed misconduct in the guilt phase by denigrating the defense as a sham and vouching for the prosecution's own witness.

(4) The above errors, taken cumulatively, violated his constitutional rights.

Approximately a month later, Mr. Melendez filed a federal habeas petition, raising the same claims. *See* Docket No. 1 (original federal habeas petition).

In late August 2015, the state superior court took action on the state habeas petition. More

---

[1] The robbery and dissuading crimes were based on events that took place in 2006 – in particular, Mr. Melendez's responding to Craigslist ads for expensive items and robbing or trying to rob the persons who had posted the ads.

2

specifically, the state superior court denied relief on the merits claims (2)-(4) above but asked the State to file an informal response to claim (1). *See* Am. Pet., vol. IX, Ex. 16 (order requesting informal response). Thereafter, in January 2016, the state superior court issued an order to show cause on claim (1). *See* Am. Pet., vol. IX, Ex. 17 (order to show cause).

Meanwhile, in March 2016, this Court took action on the federal habeas petition. The Court granted Mr. Melendez's motion to stay proceedings so that he could exhaust any necessary claims in state habeas proceedings first. *See* Docket No. 34 (Order at 2) (noting that the habeas petition contains mixed claims – claim (3) was exhausted, but the remaining claims were "pending in the state habeas petition before the Santa Clara Superior Court").

In April 2016, the state superior court ordered an evidentiary hearing on the state habeas petition – in particular, claim (1). *See* Am. Pet., vol. IX, Ex. 18 (letter from the state superior court). The evidentiary hearing took place over the course of many months, from approximately July 2016 through May 2017. *See* Am. Pet. at 6. Following that hearing, on May 5, 2017, the state superior court denied Mr. Melendez habeas relief on claim (1). The court stated as follows:

> For many of the reasons articulated by the People in this particular case the Court finds that Mr. Berson did properly advise Mr. Melendez with regards to the [plea] offer in this case, does not find that there was – there has not been sufficient showing that there was a reasonable probability that Mr. Melendez would have even accepted the offer. And, again, for many of the reasons articulated by the People in this case, as well as other reasons shown throughout the record, the Court finds that the burden has not been met by the preponderance of the evidence and the habeas petition at this time is denied.
>
> . . . .
>
> Mr. Melendez, it's quite clear that during the course of this hearing, crystal clear, that things were not perfect in your case, and things are often not perfect in any case, but when it comes to the burden of proof in this particular habeas the Court has ruled.

Am. Pet., vol. VI, Ex. 12 (Tr. at 1079-80).

Subsequently, in May 2018, Mr. Melendez filed an appeal of the state habeas decision. The state appellate court denied relief in May 2019. *See* Am. Pet. at 6. Mr. Melendez then sought relief from the California Supreme Court. The California Supreme Court denied relief in June 2019. *See* Am. Pet. at 6.

3

In July 2019, having exhausted his claims in state court, Mr. Melendez filed an amended federal habeas petition. The amended petition contained the same four claims asserted in the state habeas petition. The State now moves to dismiss the amended petition on the ground that it is untimely, *i.e.*, barred by the statute of limitations. Below, the Court briefly discusses the factual predicate for claim (1) as that is the main claim at issue.

In claim (1), Mr. Melendez alleges as follows. In July 2009, the State filed a complaint charging Mr. Melendez with four crimes, including second-degree robbery, and alleging that Mr. Melendez had personally used a firearm. *See* Am. Pet. at 4. In December 2009, the State offered Mr. Melendez a sentence of 12 years in exchange for a plea of guilty or no contest. *See* Pet., Ex. OO (Hoopes Decl. ¶ 5[2]); *see also* Am. Pet. at 11.

> [Twelve] years was the minimum sentence the court could have imposed with [the original] charges. The unusually heavy sentence was driven by the Penal Code Section 12022.53, or "10, 20, life," "use a gun and you're done," allegation, based on a sentencing scheme the voters passed in 1996. The enhancement required that a 10 year consecutive sentence be added to the base term for robbery (2, 3, or 5 years) for a minimum sentence of 12 years.

Pet., Ex. OO (Hoopes Decl. ¶ 5) (emphasis omitted).

On December 24, 2009, Mr. Berson – the trial attorney then-representing Mr. Melendez – wrote the DDA (Mr. Sanderson), asking that the DDA "amend the complaint to allege less severe firearm allegations per Penal Code Section 12022.5 in lieu of the Penal Code Section 12022.53 allegations." Pet., Ex. OO (Hoopes Decl. ¶ 7); *see also* Am. Pet. at 2; Cal. Pen. Code § 12022.5(a) (providing that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense"). Mr. Berson urged the DDA to make the amendment "'because I am certain that this would enable us to resolve the case without further litigation.'"[3] Am. Pet. at 2 (emphasis omitted).

---

[2] Mr. Hoopes is the public defender who represented Mr. Melendez after Mr. Berson (the alleged ineffective trial counsel) withdrew. Although the Hoopes declaration was offered in conjunction with the original habeas petition, and not the amended petition, the Court still cites the declaration as it is a useful document in understanding Mr. Melendez's amended petition.

[3] A copy of Mr. Berson's letter can be found at Vol. VII, Ex. 13.12 (letter, dated 12/24/2009).

4

United States District Court
Northern District of California

1　　The following day, December 25, 2009, the DDA faxed a "hypothetical first amended complaint" ("HFAC") to Mr. Berson, substituting the 12022.5 allegations in place of the 12022.53 enhancements.[4] *See* Am. Pet. at 2; Pet., Ex. OO (Hoopes Decl. ¶ 7). The HFAC amounted to a "drop" in the mandatory minimum from 12 years to 5 years. *See* Pet., Ex. OO (Hoopes Decl. ¶ 7); Am. Pet. at 7. According to the petition, although the maximum was more than 20 years, "[i]t was not a legitimate concern that [Mr. Melendez] would be sentenced to the maximum" – in particular, because of a "plethora of mitigating evidence."[5] Am. Pet. at 7; *see also* Pet., Ex. OO (Hoopes Decl. ¶¶ 7, 9) (noting that "Mr. Melendez had no significant criminal history" so "a sentence at or close to the 5 year minimum was a very real probability"; also noting that Mr. Melendez had "positive accomplishments in the community prior to incarceration" and that he had "strong community ties and support").

　　On December 28, 2009, Mr. Berson saw the HFAC. He mistakenly concluded that the mandatory minimum under the HFAC was around 12 years, not 5 years. *See* Am. Pet. at 7. Mr. Berson then communicated that incorrect information to Mr. Melendez. After Mr. Melendez suggested 5 years as a starting point, Mr. Berson "blew up on [him]." Am. Pet. at 8.

　　On December 29, 2009, Mr. Berson wrote a letter in response to the DDA, essentially rejecting the new offer. He erroneously claimed that the HFAC would guarantee Mr. Melendez more time in prison than the 12 years already being offered.[6] *See* Am. Pet. at 8; Pet., Ex. OO (Hoopes Decl. ¶ 8). In fact, the HFAC would have exposed Mr. Melendez to a minimum sentence of 5 years and a maximum sentence of 25 years.[7] *See* Pet., Ex. OO (Hoopes Decl. ¶ 9).

　　On December 31, 2009, Mr. Melendez attended a hearing with respect to the criminal charges against him. At some point, Mr. Melendez had a brief 20-second conversation with Mr.

---

[4] A copy of Mr. Sanderson's fax can be found at Vol. VII, Ex. 13.13 (fax, dated 12/25/2009).

[5] Initially, the DDA calculated the maximum as 23 years, 4 months. However, he subsequently informed Mr. Berson that he had miscalculated and that the maximum was actually 25 years. *See* Am. Pet., Vol. VIII, Ex. 14.B (fax, dated 12/28/2009).

[6] A copy of Mr. Berson's letter can be found at Vol. VII, Ex. 13.6 (letter, dated 12/29/2009).

[7] *See* note 5, *supra*.

5

Berson. Mr. Berson told Mr. Melendez that the State had "made an offer that was 'high, too risky'" and that "'guarantee[d] more than 12 years.'" Am. Pet. at 9. Again, this was incorrect. Mr. Berson continued to have a misunderstanding of the State's offer as late as March 4, 2010. *See* Am. Pet., Vol. VII, Ex. 13.19 (letter, dated 3/4/2010, from Mr. Berson to Ms. Navarrete (Mr. Melendez's mother)) ("I am hoping, but not optimistic, that the PX [preliminary hearing] will help me get a better deal for Felipe than the 12 years that was offered before the PX.").

On April 13, 2010, there was a preliminary hearing on Mr. Melendez's criminal case. After the hearing, Mr. Berson "finally" told Mr. Melendez that "'he had gotten the previous DA to be willing to go down and change the gun enhancement, after he presented to him the five years.'" Am. Pet. at 10. Mr. Berson's "statement was false because [he] never presented a five-year offer to the prosecution." Am. Pet. at 10. In any event, Mr. Berson told Mr. Melendez that it "wasn't a good deal. That [it] was too risky." Am. Pet., Vol. V, Ex. 9 (Tr. at 93).

It appears that Mr. Berson subsequently withdrew as counsel on April 22, 2010. *See* Docket No. 34 (Order at 3). Mr. Melendez's new trial attorney was a public defender, Mr. Hoopes. Mr. Hoopes represented Mr. Berson at the jury trial. In July 2011, Mr. Melendez was convicted after the jury trial.

In November 2011, prior to sentencing, Mr. Hoopes spoke to Mr. Berson about the failed plea negotiations from 2009. *See* Pet., Ex. OO (Hoopes Decl. ¶ 10). According to Mr. Hoopes,

> Mr. Berson first told me that he did not recommend the December 25, 2009 offer to Mr. Melendez. He recommended that Mr. Melendez reject the offer because the risk was too high, and because he [Berson] was still hoping that he could talk the prosecution into a certain disposition. *From our conversation, it appeared that Mr. Berson did not appreciate that the December 25, 2009 offer allowed a sentence as low as five years.*

Pet., Ex. OO (Hoopes Decl. ¶ 10) (emphasis added); *see also* Am. Pet. at 11 (asserting that Mr. Berson's "statements were consistent with a continuing misunderstanding of the HFAC"). After Mr. Hoopes sent Mr. Berson some documents, Mr. Berson changed his version of the events, now claiming to Mr. Hoopes that: (1) although he initially misunderstood the plea offer, (2) the DDA corrected him at the December 31, 2009, hearing, and (3) he then told Mr. Melendez the correct plea deal but (4) Mr. Melendez rejected it. *See* Am. Pet., Vol. VII, Ex. 13.21 (email exchange

between Mr. Hoopes and Mr. Berson); *see also* Am. Pet., Vol. 4, Ex. 7 (Tr. at 47-48) (Mr. Hoopes testifying that Mr. Berson claimed that he initially misunderstood the plea offer but that he "eventually . . . did understand . . . the top and bottom [but] thought [Mr. Melendez] would get something close to the top if he accepted that disposition"); Am. Pet, Vol. 3, Ex. 5 (Tr. at 60-66) (Mr. Berson testifying that the DDA corrected him and that he then told Mr. Melendez about the correct plea deal but Mr. Melendez rejected it).

According to Mr. Hoopes, he did not raise any issue of ineffective assistance on the part of Mr. Berson at that time because the law on ineffective assistance with respect to plea negotiations was unsettled at the time, with two cases pending before the United States Supreme Court.[8] *See*

---

[8] The two cases are *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). In *Lafler*, the Supreme Court addressed how to apply Strickland's prejudice test where ineffective assistance results in a rejection of a plea offer and the defendant is convicted at the ensuing trial; the Court held that a defendant must show that,

> but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offers terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

In *Frye*, the Court held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. Also,

> [t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. . . . [I]t is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 147.

Neither *Lafler* nor *Frye* effected any sea changes. The decisions essentially provided clarification. Notably, Mr. Melendez did not claim timeliness under § 2244(d)(1)(C). In any event, those decisions were rendered in 2012, and Mr. Melendez did not file his federal habeas

7

Pet., Ex. OO (Hoopes Decl. ¶ 14) ("I believed that any issues concerning the failed plea negotiations would be better presented after the law was settled, and after these claims were fully investigated on appeal or in post-conviction proceedings. For these reasons, I didn't consider filing any pleadings concerning the failed plea negotiations in 2009, prior to Mr. Melendez's sentencing on November 3, 2011."). After Mr. Melendez was sentenced and a direct appeal was filed, Mr. Hoopes told Mr. Melendez's appellate counsel, Mr. Derham, about his communications with Mr. Berson, "explaining that there might be an issue with regard to Mr. Berson's effectiveness during plea negotiations." Pet., Ex. OO (Hoopes Decl. ¶ 15).

Apparently, Mr. Derham later told Mr. Melendez that "there were no habeas issues" to pursue. Am. Pet. at 5. Mr. Derham made this assessment after conferring with Mr. Berson. *See* Am. Pet, Vol. XII, Ex. 63 (Derham Decl. ¶ 6) ("After conferring with Mr. Berson, as documented above, I wrote back to Mr. Melendez, informing him that there was no basis to claim ineffective assistance during plea negotiations. I based this solely on what Mr. Berson had told me about the plea negotiations, i.e., that he had presented the offer to Mr. Melendez and Melendez rejected it."). According to Mr. Derham, in or about September 2012, Mr. Berson claimed that

> he misread [DDA] Sanderson's offer, [but] then Sanderson clarified it for him when they met in court on Dec 31. Berson wrote on the letter[9]after speaking with Sanderson that the mandatory minimum was 5 years, and D could get up to 23 years. The handwritten part says as follows, according to Berson: "12/31 Deputy Sanderson says defendant's mand[atory] min[imum] on this would be 5, i.e., 5-23 year range. I told this to defendant and he still rejects. Doesn't need to think about it."

Am. Pet., Vol. XII, Ex. 63 (Derham Decl., Ex. A) (memo authored by Mr. Derham, dated 9/13/2012).

Thereafter, in October 2012, Mr. Derham sent Mr. Melendez a letter, communicating what Mr. Berson had represented:

---

petition until August 2015.

[9] The letter at issue is the letter from December 29, 2009 (erroneously dated December 24, 2009) in which Mr. Berson claimed to the DDA that the plea offer under the HFAC would guarantee Mr. Melendez more time in prison than the 12 years already being offered. *See* page 6 & n.6, *supra*.

8

> [Berson] misunderstood the district attorney's offer on the 5/23 deal when it was first made. He thought it was more than 12 years, which was the offer that was already on the table, and he advised you to reject it. However, at a court appearance a few days later (he believed it was December 31), the deputy district attorney explained the offer as a 5-year minimum and 23-year maximum with the specific term to be determined by the court.
>
> Berson then went to you and said he had misunderstood the offer and he explained the true offer to you. He said this was a 10-to-15 minute conversation in court. He said you said you were not interested in the deal and did not need more time to think about it. He said this was consistent with your stance regarding the plea bargaining, in that he could not get authority from you to accept a sentence in the range of 5 to 9 years, and you insisted on 2 years. Berson thought 2 years was unrealistic. He thought you had an unrealistic view of how the case should be resolved.

Am. Pet., Vol. XII, Ex. 63 (Derham Decl., Ex. B) (letter, dated 10/1/2012).[10] Mr. Melendez disputes Mr. Berson's version of the events, including but not limited to (1) Mr. Berson's claim that he told Mr. Melendez about the "5/23" plea offer and (2) Mr. Berson's claim that Mr. Melendez would not have accepted a sentence close to 5 years.

Mr. Melendez now asserts ineffective assistance by Mr. Berson. Mr. Melendez's main complaint is that Mr. Berson failed to identify the correct sentencing range under the HFAC and thus failed to advise Mr. Melendez to accept the plea offer that the HFAC represented. According to Mr. Melendez, but for Mr. Berson's ineffective assistance, Mr. Melendez would have accepted the plea offer with the sentencing range of 5-25 years and ultimately would have received a sentence of fewer than 16 years given his specific circumstances.[11]

---

[10] *See also* Am. Pet., Vol. VII, Ex. 13.85 (letter, dated 12/13/2011, from Mr. Berson to Mr. Melendez) (claiming that Mr. Melendez "said that 7 years was too much and even 5 years was too much[;] I would have proposed 5 with the hope of getting 7 or 9, but you wouldn't even allow me to ask for 5").

[11] Although not entirely clear, there is some suggestion in the amended petition that, even if Mr. Berson did eventually learn of and tell Mr. Melendez about the 5/23 plea offer, Mr. Berson failed to recognize that, in all likelihood, Mr. Melendez would not sentenced at the high end of that range. But even if the amended petition did contain this second, or alternative, theory for ineffective assistance of counsel, that theory has been effectively waived or abandoned. That is, in opposing the State's motion to dismiss, Mr. Melendez makes no argument that this theory of ineffective assistance is not time barred.

9

# II. DISCUSSION

## A. Legal Standard

Title 28 U.S.C. § 2244(d)(1) provides that there is a one-year statute of limitations for § 2254 habeas petitions. The statute expressly provides that

> [t]he limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

## B. Claims (2)-(4)

As a preliminary matter, the Court addresses whether claims (2)-(4) in the amended habeas petition are time barred. Claims (2)-(4) are as follows:

- Claim (2): Mr. Melendez's appellate counsel (Mr. Derham) was ineffective in not challenging prosecutorial misconduct in the guilt and sanity phases.
- Claim (3): The prosecutor committed misconduct in the guilt phase by denigrating the defense as a sham and vouching for the prosecution's own witness.
- Claim (4): The errors in claims (2)-(4), along with that in claim (1) (*i.e.*, ineffective assistance by trial counsel Mr. Berson), taken cumulatively, violated Mr. Melendez's constitutional rights.

In the instant case, Mr. Melendez does not dispute that claims (2)-(4) in his habeas petition are untimely under § 2244(d)(1)(A) – *i.e.*, because one year after the date on which his judgment became final would be September 10, 2014; Mr. Melendez did not file his § 2254 habeas petition

until August 17, 2015. *See* Am. Pet. ¶ 8 (alleging that Mr. Melendez's claims "were filed over a year after the judgment underlying his convictions and sentence became final on appeal (September 10, 2014)"); *see also Melendez v. Arnold*, No. 15-cv-03753-EMC, 2016 U.S. Dist. LEXIS 31109, at *12 (N.D. Cal. Mar. 10, 2016) (indicating that Mr. Melendez's "petition arguably became time-barred on September 10, 2014, 90 days after the direct appeal concluded," as Mr. Melendez did not file a petition for writ of certiorari). Moreover, Mr. Melendez does not argue that claims (2)-(4) are timely under § 2244(d)(1)(B)-(D) – or even if the Court were to apply equitable tolling.

Accordingly, the Court grants the State's motion to dismiss with respect to claims (2)-(4).

C. Claim (1): Timeliness Under § 2244(d)(1)(B)

The Court now turns to the issue of whether claim (1) – *i.e.*, the claim for ineffective assistance on the part of Mr. Berson – is timely. For this claim, Mr. Melendez does not assert timeliness under § 2244(d)(1)(A) or (C). Instead, he argues that the claim is timely under § 2244(d)(1)(B) and (D). He also argues that, even if these subsections do not apply in his case, he is still entitled to equitable tolling. Finally, Mr. Melendez contends that he should be given an evidentiary hearing as to whether claim (1) is time barred because there are controverted factual issues that must be resolved. The Court addresses first the issue of timeliness under § 2244(d)(1)(B).

Under § 2244(d)(1)(B), the one-year limitations period begins to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). As is clear from the language in this statute, "State action" must be the impediment to filing of the habeas claim. *See, e.g.*, *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (noting that "[t]he limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials"). In addition, there must be a "'causal connection between the . . . impediment and [the] failure to file a timely habeas petition.'" *Randle v. Crawford*, 578 F.3d 1177, 1184 (9th Cir. 2009).

According to Mr. Melendez, a California Supreme Court decision, *In re Alvernaz*, 2 Cal. 4th 924 (1992), is the State action that prevented him from filing his habeas petition (specifically, claim (1)). *Alvernaz* involved a state habeas proceeding. The petitioner sought habeas relief from the state court on the ground that he had been deprived of effective assistance of counsel as guaranteed by both the federal and California Constitutions. *See id.* at 928. The California Supreme Court noted that, under both federal and state law, a claim for ineffective assistance required a showing that "(1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; *and* (2) counsel's deficient performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." *Id.* at 936-37 (emphasis in original). The deficient performance in *Alvernaz* concerned counseling on a plea bargain. The Court noted that, given this context, "[t]o establish prejudice, [the] defendant must prove there is a reasonable probability that, but for counsel's deficient performance, the defendant would have accepted the proffered plea bargain and that in turn it would have been approved by the trial court." *Id.* at 937.

The California Supreme Court identified several factors to be considered in determining whether a defendant, with effective assistance, would have accepted the offer – including "whether the defendant indicated he or she was amenable to negotiating a plea bargain." *Id.* at 938. The Court added:

> In this context, a defendant's self-serving statement – after trial, conviction, and sentence – that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims.

*Id.* at 938 (emphasis in original).

Mr. Melendez characterizes *Alvernaz* as setting up a corroboration requirement when a criminal defendant brings a claim of ineffective assistance – whether under federal or state law. Mr. Melendez further argues that federal law does not, in fact, have such a requirement, pointing to, *e.g.*, *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003), where the Ninth Circuit stated as

12

follows:

> [T]he *Alvernaz* statement of such a universal requirement of corroboration is in substantial tension with *Strickland*'s discouragement of "mechanical rules" that distract from an inquiry into the fundamental fairness of the proceedings, and with its holding that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."

*Id.* at 1054 n.6.

The problem for Mr. Melendez is that, even if *Alvernaz* was wrong in its interpretation of federal law, *Alvernaz* did not prevent him from *filing* his federal habeas petition. In *Shannon*, the Ninth Circuit noted that

> [t]he limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials. A plurality of the Supreme Court has also suggested that the provision would apply if a "state court . . . refused to rule on a constitutional claim that had been properly presented to it." These cases comport with the plain meaning of the provision, which applies when a petitioner has been impeded from *filing* a habeas petition.

*Shannon*, 410 F.3d at 1087-88 (emphasis in original; ultimately rejecting the habeas petitioner's argument that a state court decision that "determined state law in a way that provided no legal basis for a federal habeas petition" was an impediment to petitioner's filing a federal habeas petition – "[h]e was free to *file* such a petition at any time") (emphasis in original); *see also Randle*, 578 F.3d at 1184 (noting that petitioner "alleges only that his [state-appointed] counsel's failure to file a timely notice of appeal denied him his right to *direct appeal*, not that it prevented him from filing a federal habeas petition") (emphasis in original). Here, in spite of *Alvernaz*, Mr. Melendez could have timely filed a protective federal habeas petition including claim (1) and then asked for a stay to exhaust, *inter alia*, claim (1) in state proceedings (where he would be subject to *Alvernaz*'s corroboration requirement). By proceeding this way, Mr. Melendez would avoid being subject to "the successive bar on the filing of" more than one federal habeas petition. Pet.'s Opp'n at 16. (And this is in fact what Mr. Melendez did, except that he did not timely file his protective federal habeas petition.)

Moreover, *Alvernaz*'s requirement was not binding on a *federal* habeas claim of ineffective

13

assistance of counsel. The Ninth Circuit's decision in *Nunes* made that clear in 2003.

To the extent Mr. Melendez's real complaint that he needed the assistance of counsel to develop corroboration evidence, especially because he was given incorrect advice by his appellate attorney (Mr. Derham) that there were no habeas issues for him to pursue. *See* Pet.'s Opp'n at 16 (arguing that *Alvernaz*'s corroboration requirement "made it impossible for *pro per* petitioners, like Mr. Melendez, to obtain relief after they are told that there are no habeas issues by the counsel[;] [i]n such circumstances, the assistance of post-conviction counsel is necessary to corroborate [their client's aversions] independently by objective evidence"). But if that is the case, the impediment to Mr. Melendez's filing his habeas petition would not be *Alvernaz* but rather the bad advice that his prior counsel gave him – and that is not state action, even taking into account that Mr. Derham was appointed to represent Mr. Melendez on appeal.[12] *See* Am. Pet., Vol. XII, Ex. 63 (Derham Decl. ¶ 2) (testifying that he "was appointed to represent [Mr.] Melendez on appeal"); *Hasley v. Paramo*, No. 15cv310-H (DHB), 2015 U.S. Dist. LEXIS 136493, at *8 (S.D. Cal. July 29, 2015) (noting inability to find "any case law holding that ineffective assistance of state-appointed counsel is a recognized state-created impediment under § 2244(d)(1)(B)[;] [t]o the contrary, Courts have rejected the notion that ineffective assistance of counsel amounts to a state-created impediment"); *Tschida v. Paramo*, No. 18-cv-00577-JLS-JLB, 2018 U.S. Dist. LEXIS 208096, at *8 (S.D. Cal. Dec. 10, 2018) (indicating that "the acts and/or omissions of a petitioner's appellate counsel do not constitute 'state action' within the meaning of section 2244(d)(1)(B) because petitioner's counsel 'was not acting on behalf of the state' but represented petitioner personally; citing in support, *inter alia*, *Polk County v. Dodson*, 454 U.S. 312, 321-322 (1981), which held, in the § 1983 context that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a

---

[12] An attorney's advice, however, could help to support a different timeliness argument. *Cf. Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001) (noting that, under § 2254(d)(1)(D), a petitioner must have discovered, or with the exercise of due diligence, could have discovered facts suggesting both deficient performance and resulting prejudice; here, even if the petitioner had knowledge at the time of trial that trial counsel's performance was deficient to an extent, he "could not have asserted at that time, in objective good faith, that he was prejudiced as a result . . . – indeed, he was expressly told as much by his appointed appellate counsel").

14

criminal proceeding). Alternatively, the impediment would be his lack of counsel to assist him, which again would not be state action, *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) (noting that "[t]here is no right to counsel in postconviction proceedings"). Even if there were state action here, it is not clear why Mr. Melendez needed the help of an attorney to help him develop corroboration evidence. The corroboration evidence would be evidence to support his position that he would have accepted the plea offer under the HFAC. He could have gotten such corroboration evidence from, *e.g.*, his mother. *See* Resp.'s Mot. at 6 (arguing that Mr. Melendez "did not need federal habeas counsel to prepare his own declaration, or to obtain declarations and other documentary evidence (including emails, case files, and transcripts) from his friends, family, trial counsel [Mr. Hoopes], and appellate counsel [Mr. Derham]").

Accordingly, Mr. Melendez's argument that claim (1) should be deemed timely under § 2244(d)(1)(B) lacks merit. To the extent Mr. Melendez argues that he needs an evidentiary hearing on whether a State action impeded him from filing his habeas petition, that argument lacks merit as well. According to Mr. Melendez, there is a factual question as to "[w]hen did petitioner obtain sufficient evident to overcome Berson's false representations [*i.e.*, that Mr. Melendez would not accept a five-year sentence] as necessary to satisfy *In re Alvernaz*?" Pet.'s Mot. at 5. But the Court need not conduct this inquiry with respect to § 2244(d)(1)(B) because the question here is whether *Alvernaz* prevented Mr. Melendez from *filing* his habeas petition. As noted above, it is not *Alvernaz* that prevented Mr. Melendez from filing his habeas petition: he could have timely filed a protective habeas petition and then sought a stay to exhaust, *inter alia*, claim (1) in state court. If anything, what impeded Mr. Melendez was the bad advice of Mr. Derham or the lack of post-conviction counsel, neither of which constitutes state action.

D.  Claim (1): Timeliness Under § 2244(d)(1)(D)

Under § 2244(d)(1)(D), the one-year statute of limitations for the filing of a federal habeas petition begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). As indicated above, the gist of Mr. Melendez's claim for ineffective assistance is that Mr. Berson failed to correctly identify the correct sentencing range under the HFAC and thus failed to advise

15

Mr. Melendez to accept the plea offer that the HFAC represented. The question for the Court is (1) when did Mr. Melendez know, or when should he have known, of Mr. Berson's deficient performance and (2) when did he know, or when should he have known, that the deficient performance prejudiced him? *See Hasan*, 254 F.3d at 1154 (noting that, here, even if the petitioner had knowledge at the time of trial that trial counsel's performance was deficient to an extent, he "could not have asserted at that time, in objective good faith, that he was prejudiced as a result . . . – indeed, he was expressly told as much by his appointed appellate counsel").[13]

At the latest, Mr. Melendez knew or should have known of Mr. Berson's deficient performance by late 2012, *i.e.*, through his communications with his counsel on direct appeal, Mr. Derham. As noted above, in October 2012, Mr. Derham sent Mr. Melendez a letter, informing him about the representations that Mr. Berson had made about the plea negotiations.

> [Berson] misunderstood the district attorney's offer on the 5/23 deal when it was first made. He thought it was more than 12 years,

---

[13] In *Hasan*, the petitioner's claim of ineffective assistance was based on the failure of counsel to investigate or demand inquiry into possible juror misconduct. According to the petitioner, near the end of his trial, several individuals saw a person who was a witness for the prosecution in a different case talking on a pay phone; heard the person say the petitioner's name; and then observed the person, after completing the phone call, approach a juror in the petitioner's case – asking if he was on the jury in the petitioner's case and handing a piece of paper that said "'be sure to call me.'" *Hasan*, 254 F.3d at 1152. The petitioner argued that, if counsel had investigated, he would have learned that the person was in a long-term romantic relationship with one of the prosecution's witnesses in the petitioner's case. *See id.* at 1152-53. The district court held that the ineffective assistance claim was untimely because the petitioner had enough facts to raise such a claim at the time of trial, when he knew that the person had spoken his name on the phone and then approached a juror; the "romantic relationship . . . was not a necessary element of [the] claim." *Id.* at 1153.

On appeal, the Ninth Circuit agreed with the petitioner that the clock did not start to run until he learned of the relationship between the person and the witness in his case. *See id.* at 1154. Although the petitioner knew at the time of trial that

> there may have been jury tampering and that his counsel did not properly investigate it or request a continuance to do so, [he] did now know at that time – nor did he have reason to know – what he later learned: the added facts that such an investigation would have revealed. It cannot be gainsaid that Hasan could not have asserted at that time, in objective good faith, that he was prejudiced as a result of his counsel's deficient performance – indeed, he was expressly told as much by his appointed appellate counsel.

*Id.*; *see also id.* at 1155 (ultimately remanding for further factual findings on the issue of when the petition could have, with the exercise of due diligence, discovered the relationship).

16

> which was the offer that was already on the table, and he advised you to reject it. However, at a court appearance a few days later (he believed it was December 31), the deputy district attorney explained the offer as a 5-year minimum and 23-year maximum with the specific term to be determined by the court.
>
> Berson then went to you and said he had misunderstood the offer and he explained the true offer to you. He said this was a 10-to-15 minute conversation in court. He said you said you were not interested in the deal and did not need more time to think about it. He said this was consistent with your stance regarding the plea bargaining, in that he could not get authority from you to accept a sentence in the range of 5 to 9 years, and you insisted on 2 years. Berson thought 2 years was unrealistic. He thought you had an unrealistic view of how the case should be resolved.

Am. Pet., Vol. XII, Ex. 63 (Derham Decl., Ex. B) (letter, dated 10/1/2012). Clearly, with this letter, Mr. Melendez knew or should have known that Mr. Berson had failed to identify the correct sentencing range under the HFAC and that Mr. Berson had (allegedly) lied about telling Mr. Melendez about the 5/23 plea offer – as well as lied about Mr. Melendez rejecting an offer in the range of 5 years.

Mr. Melendez points out that the State must also show that he knew or should have known that he was prejudiced as a result of Mr. Berson's deficient performance. This is true. But "'[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan*, 254 F.3d at 1154 n.3. Here, it is clear that Mr. Melendez knew or should have known of prejudice at the time that he received the October 2012 letter from Mr. Derham. Mr. Derham's letter stated that Mr. Berson had told Mr. Melendez about the 5/23 offer and that Mr. Melendez would not accept a sentence of 5 years. Mr. Melendez knew, *upon receiving and reviewing that letter*, that Mr. Berson had not had that conversation with him and further that he would, in fact, have accepted a sentence of 5/23 years. Having learned of Mr. Berson's alleged ineffective assistance in conveying the wrong plea terms, Mr. Melendez would have known whether he was prejudiced thereby – *i.e.*, whether he would have accepted that plea offer. Given his knowledge of the factual predicate for prejudice, the one-year limitations period should have started running, at the latest, on that date of the Derham letter. Yet Mr. Melendez did not file his federal habeas petition within a year thereafter: he did not file his federal habeas petition until August 2015, nearly three years later, well after the one-year

17

statute of limitations.

In his papers, Mr. Melendez argues that the limitations period should not have started to run at that time because he could not have, in good faith, claimed prejudice at that time; Mr. Melendez needed the help of post-conviction counsel to show that Mr. Berson had lied, *e.g.*, about what kind of sentence Mr. Melendez would be willing to accept. *See, e.g.*, Opp'n at 22; *see also* Opp'n at 24 (arguing that post-conviction counsel was needed because of "serious misconduct" by Mr. Berson – *e.g.*, not providing his complete work file). But this argument is not persuasive. As the State points out, "[§] 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact." *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005), *abrogated in part on other grounds by McQuiggin v. Perkins*, 569 U.S. 383 (2013). "[I]f new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012); *see also McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) ("[Petitioner] has confused the facts that make up his claims with evidence that might support his claims."); *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("[Petitioner] is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim."); *cf. Deloney v. McCann*, 229 F. App'x 419, 422 (7th Cir. 2007) ("The statute of limitations began running when [petitioner] became aware of the facts giving rise to his claim, not when he obtained the evidence to support it.").

As for Mr. Melendez's contention that he should be entitled to an evidentiary hearing on when he could have asserted, in objective good faith, that he was prejudiced as a result of Mr. Berson's ineffective assistance. But for the reasons stated above, there is no factual issue preventing the running of the statute of limitations as noted.

Accordingly, the Court concludes that Mr. Melendez does not have an argument of timeliness based on § 2244(d)(1)(D).

E. Claim (1): Timeliness Under Equitable Tolling

Finally, Mr. Melendez argues that his ineffectiveness claim is timely based on equitable tolling. Mr. Melendez's main contention is that Mr. Berson engaged in gross misconduct during his representation of Mr. Melendez, which should serve as a ground for equitable tolling.

The Supreme Court has acknowledged that equitable tolling can apply to a federal habeas claim. *See Holland v. Fla.*, 560 U.S. 631, 645 (2010) (stating that "§ 2244(d) is subject to equitable tolling in appropriate cases"). More specifically, "[a] 'petitioner' is 'entitled to equitable tolling' . . . if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."[14] *Id.* at 649. To the extent a petitioner claims the extraordinary circumstance is the misconduct of his attorney, the Supreme Court has noted that garden variety negligence or "'garden variety . . . excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Id.* at 651-52. The Ninth Circuit has held that "attorney misconduct falling short of abandonment," however, can still serve as a basis for equitable tolling. *Luna v. Kernan*, 784 F.3d 640, 648 (9th Cir. 2015) (rejecting the argument that a post-*Holland* Supreme Court decision – *Maples v. Thomas*, 565 U.S. 266 (2012) – requires attorney abandonment in order for equitable tolling to apply).

---

[14] Regarding diligence, the Ninth Circuit has commented as follows:

> [W]e are *primarily* concerned with whether a claimant was "diligent in his efforts to pursue his appeal *at the time his efforts* were being thwarted." In other words, diligence during the existence of an extraordinary circumstance is the key consideration. Also relevant is whether petitioners "pursued their claims within a reasonable period of time before the external impediment . . . came into existence."
>
> Diligence *after* an extraordinary circumstance is lifted may be illuminating as to overall diligence, but is not alone determinative. This conclusion draws not only on the obvious inference that diligence after the fact is less likely to be probative of the question of whether the extraordinary circumstance caused the late filing, but also from [the Ninth Circuit's] recognition [in *Socop-Gonzalez*] that courts should not take it upon themselves to decide how much time a claimant needs to file a federal case.

*Gibbs v. Legrand*, 767 F.3d 879, 892 (9th Cir. 2014) (emphasis in original).

Mr. Melendez's equitable tolling argument essentially tracks his § 2244(d)(1)(D) argument. That is, although Mr. Melendez charges Mr. Berson with various acts of misconduct, ultimately, the main charge is that Mr. Berson lied to Mr. Derham (appellate counsel) that Mr. Melendez would *not* have accepted a plea of 5 years – when in fact he would have – which led to Mr. Derham telling Mr. Melendez that there were no habeas issues to pursue. The problem for Mr. Melendez is that, as noted above, Mr. Derham told him, in October 2012, of Mr. Berson contended that he had told Mr. Melendez about the 5/23 deal and that Mr. Melendez stated he would not take a plea of 5 years. That being the case, as of October 2012, Mr. Melendez was no longer being impeded by Mr. Berson's conduct because he knew or Mr. Berson's lies; yet, he still did not file his federal habeas petition until August 2015.

To the extent Mr. Melendez seeks an evidentiary hearing on equitable tolling, the same analysis in Part II.D applies.

### III. CONCLUSION

For the foregoing reasons, Mr. Melendez's motion for an evidentiary hearing is denied, and the State's motion to dismiss is granted. The claims asserted in Mr. Melendez's petition, including but not limited to his claim of ineffective assistance of trial counsel (Mr. Berson), are all time barred. Because the Court is dismissing the petition based on the AEDPA statute of limitations, the Court orders the Clerk of the Court to enter a final judgment in accordance with the close the file in this case. The Court declines to issue a certificate of appealability.

This order disposes of Docket Nos. 96 and 108.

**IT IS SO ORDERED**.

Dated: April 6, 2020

EDWARD M. CHEN
United States District Judge